**JOSEPH E. DeMARCO, INC.,**
**Plaintiff–Appellant,**

v.

**John P. CAMPO, as Chapter 7 Trustee for the Estate of Advanced Ring Manufacturers, Inc., Defendant–Appellee.**

No. 91 Civ. 8589 (KTD).

United States District Court,
S.D. New York.

Jan. 6, 1994.

---

Finkel Goldstein Berzow & Rosenbloom, New York City (Gary I. Selinger, Kevin J. Nash, of counsel), for plaintiff-appellant.

LeBoeuf, Lamb, Leiby & MaCrae, New York City (John P. Campo, Cynthia L.G. Hojnacki, of counsel), for defendant-appellee.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

On November 4, 1991, Judge Cornelius Blackshear of the United States Bankruptcy Court, Southern District of New York, granted summary judgment in favor of defendant John Campo, Bankruptcy Trustee in the matter of Advanced Ring Manufacturers ("Trustee"). *DeMarco v. Campo*, No. 89 B 10667 (Bankr.S.D.N.Y. Nov. 4, 1991) (order granting summary judgment). Judge Blackshear also denied plaintiff Joseph DeMarco's ("DeMarco") cross-motion for summary judgment. Shortly thereafter, DeMarco brought this timely appeal pursuant to Bankruptcy Rule 8001 *et seq.*, 11 U.S.C.A.Bankr.Rules 8001–8019 (1984). For the following reasons, the bankruptcy court's decision is affirmed.

### Background

At oral argument on October 24, 1991, Judge Blackshear found the following facts: [1]

---

1. A Bankruptcy Court's findings of fact are not set aside unless they are found to be clearly erroneous. Bankr.R. 8013. Legal conclusions are, however, subject to *de novo* review. *See In re O.P.M. Leasing Serv., Inc.,* 79 B.R. 161, 162 (S.D.N.Y.1987). No factual disputes have been raised in this appeal. DeMarco only questions certain legal determinations. Consequently, these issues will be addressed *de novo*.

(1) Pursuant to an order for the sale of the debtor's assets, the Trustee noticed a public auction with an opening bid of $75,000.

(2) DeMarco and a second bidder engaged in a bidding war over the debtor's molds, models, sample lines, customer names, customer list and computer software;

(3) After Demarco made a $140,000 bid, the auctioneer requested additional bids. Receiving none, auctioneer declared DeMarco's bid to be the highest;

(4) The competing bidder objected, stating that he had been conferring with his associate at the time;

(5) The Trustee then stopped the bidding to consult with his counsel and the counsel of a secured creditor. After the consultation, the Trustee re-opened the bidding on the items at issue;[2]

(6) The bidding closed with DeMarco's winning bid of $235,000;

(7) On August 21, 1989, DeMarco commenced this adversary proceeding to invalidate the reopening of the bidding and issue a $95,000 judgment in his favor.

(See October 24, 1991 Hearing Trans. at 24–25).

DeMarco asserts that the bankruptcy court erred in three respects. First, the bankruptcy court allowed the Trustee to exercise unlimited discretion in determining the adequacy of a particular bid. Second, DeMarco contends that the bankruptcy court read the terms of sale over-expansively, and thus gave boundless discretion to the trustee. These two arguments are indistinguishable. Finally, DeMarco alleges that the bankruptcy court failed to properly evaluate the context under which the instant sale was conducted, namely a sale primarily for the benefit of, and as an accommodation to, the debtor's secured creditors. DeMarco asserts that because the value of the secured creditor's

liens exceeded the collateral's value, the trustee's duty towards the debtor's creditors is diminished. All DeMarco's arguments are without merit.

## Discussion

█ A trustee may condition a bankruptcy sale. *Dulman v. Martin,* 66 A.D.2d 809, 411 N.Y.S.2d 358, 361 (2d Dep't 1978). *See also,* 3 *Collier Bankruptcy Practice Guide* § 43.-02[3] at 43–9 (1990). Indeed, DeMarco himself "has never disputed the fundamental proposition that a trustee retains the inherent right to condition a sale of estate assets." Appellant's Reply Br. at 2. *See also* Appellant's Br. at 15. Here, the Terms of Sale for Assets of Advanced Ring Manufacturers, Inc. ("Terms") imposed certain conditions upon the auction. In particular, ¶ 14 states that "[t]he trustee reserves the right to confirm any sale in the event he deems the bid on the assets [to] be inadequate." The Terms were distributed and announced at the auction. Appellee's Br. at 5 & 7. DeMarco does not dispute this.

█ A sale is not final until the trustee confirms the bid. It has long been established that "[u]ntil confirmation an accepted bidder is merely a preferred proposer." *In re Burr Mfg. & Supply Co.,* 217 F. 16, 19 (2d Cir.1914); *In re Todem Homes, Inc.,* 51 B.R. 883, 889 (S.D.N.Y.1985). Furthermore, "[t]he fact that the sale may have been final under state law does not make the sale final for bankruptcy purposes." *In re Allison Warehouse & Transfer, Inc.,* 145 B.R. 293, 295 (E.D.Arkansas 1992). Hence, although N.Y. Uniform Commercial Code § 2–328 (McKinney 1993) states that "[a] sale by auction is complete when the auctioneer so announces by the fall of the hammer ..." the section should not be read to preclude the "imposition of fair and reasonable conditions on the auction of sale goods to merchants [since such a rule] would fly in the face of one of the [Bankruptcy] Code's most important policies." *Dulman,* 411 N.Y.S.2d at 361.

---

2. DeMarco asserts that there was a "pronounced lapse of time before the close of the bidding and the objection raised by the other bidder." (Rule 13(h) Counter Statements ¶ 1). His attorney, present at the time, states that this so called lapse was no more than one to two minutes long.

(Zabriskie Aff. ¶ 1). The Trustee, to the contrary, contends the competing bidder objected immediately. Appellee Br. at 4. Whether no time or two minutes passed, however, is immaterial. The Trustee's power to refuse a bid as inadequate is unaffected by the passage of 120 seconds.

In this instance, the Trustee never confirmed the bid. That the auctioneer's hammer fell upon DeMarco's $140,000 bid in no way obligated the Trustee to confirm it.[3]

Notwithstanding, DeMarco argues that the $75,000 minimum bid set by the Trustee established the adequate sale price for the assets. Consequently, he concludes, the Trustee should have confirmed his $140,000 bid simply because it offered a better price than the set minimum. Appellant's Br. at 12–13. This argument, like DeMarco's other arguments, has no merit.

A minimum bid, or upset price, is neither dispositive of a bid's adequacy nor determinative of the assets' fair market value. *Manhattan Ry. Co. v. Central Hanover Bank & Trust,* 99 F.2d 789 (2d Cir.1938), *cert. denied,* 306 U.S. 641, 59 S.Ct. 582, 83 L.Ed. 1041 (1939) ("As a matter of law [the upset price] established nothing except to give notice to prospective purchasers that lesser bids would not be entertained.") Instead, when rejecting a proposed sale, "the governing principle is to obtain the best price for the bankruptcy estate." *In re University Avenue Properties,* 55 B.R. 986, 989 (E.D.Wisconsin 1986). *See also In re General Insecticide Co.,* 403 F.2d 629, 630–631 (2d Cir.1968). The best price for the estate is not one which is simply higher than the set minimum, as DeMarco would have, but the highest price that the market will bear. While DeMarco makes much of the fact that his $140,000 bid nearly doubled the $75,000 minimum, he does not acknowledge that the final sale price of $235,000 was 58% higher than his $140,000 bid and more than three times greater than the $75,000 minimum.

Even if DeMarco could successfully argue that his $140,000 bid was adequate, the Trustee was not compelled to confirm it. Thus, "an apparently adequate bid[,] if there is a substantial disparity between it and a subsequent bid" may be refused confirmation. *In re Gil–Bern, Inc.,* 526 F.2d 627, 628–29 (1st Cir.1975). Indeed, confirmation "may be denied . . . where there is a reliable degree of probability that a substantially better price will be secured by a resale." *Reid v. King,* 157 F.2d 868, 873 (4th Cir.1946).[4] In fact, at the auction, it was apparent that a bidding war was in the offing. This, of course, could lead to substantially higher bids for the sale assets than DeMarco's bid of $140,000. The Trustee acted well within the discretion provided by ¶ 14 of the Terms in determining that DeMarco's $140,000 was inadequate given the apparent market interest in the sale assets.

Lastly, DeMarco argues that when the rights of secured, rather than general, creditors are at issue, the Trustee need not, within the bounds of the Terms, maximize the returns to estate. Appellant's Br. at 14–15. Not only is this argument ludicrous, it is irrelevant. As the Trustee now anticipates a distribution to general creditors (See Appellee's Br. at 14), this argument need not be addressed further.

For the foregoing reasons, Judge Blackshear's order granting summary judgment to the Trustee and denying summary judgment to Demarco is affirmed.

SO ORDERED.

---

3. In *In re WPRV–TV, Inc.,* 983 F.2d 336 (1st Cir.1993) a bankruptcy trustee refused to accept the highest bid proffered in compliance with auction procedures. There, the court rejected appellant's argument that it was entitled to purchase the assets because its bid was the highest at auction.

> We need look no further than the bidding instructions themselves to refute this claim. The instructions clearly state that the trustee reserves the right to, in her sole discretion, . . . (c) reject any or all bids. This statement plainly dovetails with the trustee's statutory role as sole representative of the estate. 11 U.S.C. § 323. Here, where the [appellant's] bid

would yield little benefit to the estate and other creditors, the trustee was well within her discretion in not recommending the [appellant's] bid for confirmation, and the court correctly denied [appellant's] motion. *Id.* at 342.

4. DeMarco confuses the standards applied in the confirmation of a bankruptcy sale and the vacatur of an already confirmed sale. To set aside a confirmed sale, "the existence of fraud, mistake or a like infirmity would be necessary." *In the Matter of Chung King, Inc.,* 753 F.2d 547, 549–50 (7th Cir.1985). As discussed above, this sale was never confirmed. This standard, therefore, is not applicable.