In re AMERICAN FREIGHT
SYSTEM, INC., Debtor.

ROADRUNNER FREIGHT SYSTEMS,
INC., Appellant,

v.

AMERICAN FREIGHT SYSTEM,
INC., Appellee.

Nos. 90–4025–S, 88–41050–11.

United States District Court,
D. Kansas.

April 2, 1991.

K. Thor Lundgren, Kristine H. Cleary, Michael, Best & Friedrich, Milwaukee, Wis., Charles R. Hay, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for appellant.

Michael J. O'Rourke, Robert J. Labate, Nancy Alquist, Michael J. Collins, Winston & Strawn, Chicago, Ill., Norman E. Beal, Kent E. Whittaker, Hillix, Brewer, Hoffhaus, Whittaker & Horner, Kansas City, Mo., for debtor.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on appeal by Roadrunner Freight Systems, Inc. ("appellant") from a Judgment (R. Doc. 11), and Memorandum of Decision (R. Doc. 12), entered on January 17, 1990 (as amended on January 31, 1990) (R. Doc. 15), by the United States Bankruptcy Court for this District in which the bankruptcy court granted the motion of the debtor, American Freight System, Inc. ("debtor"), to set aside a March 10, 1989 sale order (R. Doc. 7), authorizing the debtor to sell to appellant certain real property located near Milwaukee, Wisconsin.[1] Appellant filed its notice of appeal on January 26, 1991. (R. Doc. 13). Because the court finds that oral argument would not be of material assistance in resolving this appeal, appellant's motion for oral argument will be denied. D.Kan. 710(a)(7).

Appellant presents two issues in this appeal. First, did the bankruptcy court err in granting debtor's motion to set aside the March 10, 1989 order approving the sale of a parcel of real property in Milwaukee, Wisconsin from debtor to appellant (hereinafter referred to as the "sale order")? Second, did the bankruptcy court, upon granting debtor's motion to set aside the sale order, err in not ordering a valuation hearing to determine the appropriate amount of abatement, if any, of the purchase price?

 The court finds that it has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. The standards of review on appeal to this court from a decision of the bankruptcy court are well-settled. The district court functions as an appellate court and is authorized to affirm, reverse, or modify the bankruptcy court's ruling or to remand the case for further proceedings. Fed.R.Bankr.P. 8013. The district court may examine the bankruptcy court's con-

1. In an order filed February 1, 1990 (R. Doc. 15), the bankruptcy court amended the January 17, 1990 order to state: "[t]his decision does not affect the Court's Order of May 9, 1989, docket entry 1080, whereby sale of the terminal portion only of the tract was confirmed."

clusions of law *de novo*. *In re Mullet*, 817 F.2d 677, 679 (10th Cir.1987). The bankruptcy court's findings of fact must be upheld unless they are clearly erroneous. *In re Heape*, 886 F.2d 280, 282 (10th Cir. 1989). Appellate review of a bankruptcy court's order granting relief under Rule 60(b) of the Federal Rules of Civil Procedure is limited to whether the bankruptcy court abused its discretion. *See, e.g., Greenwood Explorations, Ltd. v. Merit Gas & Oil Corp., Inc.*, 837 F.2d 423, 426 (10th Cir.1988) (stating that a Rule 60(b) motion "is left almost entirely up to the discretion of the trial court").

▆ In its January 17, 1990, memorandum of decision, the bankruptcy court stated the facts underlying this appeal, which appear to be essentially undisputed, as follows:

The debtor, a less than full load trucking concern, offered in excess of forty properties for sale in this proceeding. The debtor owned a property in Cudahy, Wisconsin, hereinafter referred to as the Milwaukee property, consisting of a 69 door terminal on 24 acres of land. Debtor advertised the property as a 69 door terminal on 24 acres with an adjacent property consisting of 12 acres. The debtor was in error concerning the existence of two tracts; there is only one 24 acre tract. The debtor intended to advertise and sell separately the truck termination with the acreage appurtenant thereto which is fenced as one tract and the other vacant acreage consisting of 12 to 14 acres.

Debtor received two bids for the Milwaukee property, one from Overnite Transportation, Inc., and one from Roadrunner Freight Systems, Inc. The Overnite bid was a package bid on three separate terminals for 1.9 million dollars. There is no evidence of which the Court is aware of what property in Milwaukee Overnite believed it was bidding on, i.e., the terminal sitting on 11 or 24 acres of land, or the terminal sitting on 24 acres of land and an additional 12 acre tract. It is known that whatever Milwaukee land was included comprised a $900,-000.00 component of the overall bid which was not severable.

Roadrunner had an appraisal made, the Klein appraisal, which disclosed that the property owned by debtor was one 24 acre tract. This appraisal was not part of the Roadrunner bid nor was it shared during the time pertinent to this decision. The Klein appraisal basically valued the terminal facility and the 9 to 11 fenced acres it allegedly sits on and separated it from the remaining acreage, said to be 14, giving the terminal a value of $1,150,-000.00. Though the remaining acreage was given a value of $100,000.00, this value appears to be a volunteered afterthought and not part of what was sought by Roadrunner. Roadrunner submitted its bid to the debtor and, orally and in a letter accompanying its bid documents, advised the debtor that it had discovered that the debtor owned only one tract of ground in Milwaukee and that it was bidding on that tract. Roadrunner attached as an exhibit to its bid a legal description of the tract which, though it does not specifically recite the exact acreage, gives sufficient measurements to mathematically arrive at the full 24 acre figure.

The debtor, though acknowledging to Roadrunner that it in fact did own only a single tract in the Milwaukee area, nevertheless noticed the prospective sale to Roadrunner otherwise. The debtor sent notice of the prospective sale to the official creditors' committee and other interest parties, including Roadrunner and Overnite, advising that it proposed a sale to Roadrunner of the Milwaukee property for $925,000.00 which was 70% of the appraised value of $1,330,000. The debtor attached a summary of its own appraisal, the Dandurand appraisal, to the notice of proposed sale. That summary states that the terminal facility, situated on 11 acres, was worth $1,330,000.00 and that the remaining 14 acres were worth $345,000.00. Though the full formal bid of Roadrunner was referred to in the notice, it was not included. It was available for inspection and, had it been viewed, would have dis-

closed reference to a street address for the property and to an attached legal description. The legal description does not specifically set forth the acreage but, as previously indicated, the acreage can be extrapolated from the measurements contained therein. The creditor's committee and its counsel received the notice of proposed sale. If the underlying documents were reviewed, the legal description was not given any particular attention. The committee did object to a proposed sale for less [sic] that 60% of appraised value on the same calendar as was the instant proposed sale. That objection was sustained.

*In re American Freight System, Inc.*, No. 88–41050–11, slip op. at 1–4 (Bankr.D.Kan., *unpublished*, January 17, 1990).

In stating its legal conclusions in ruling upon debtor's motion to set aside the sale order, the bankruptcy court found that, unlike the private sale contract situation, the protection of the rights of the debtor's unsecured creditors was of "paramount importance." *Id.*, at 4 (citing *Procter and Gamble Manufacturing Co. v. Metcalf*, 173 F.2d 207 (9th Cir.1949)). After citing the language of Rule 60(b) of the Federal Rules of Civil Procedure, the bankruptcy court recognized that mere inadequacy of price was insufficient to set aside a confirmed sale. *Id.*, at 5 (citing *Mason v. Ashback*, 383 F.2d 779 (10th Cir.1967). The bankruptcy court then stated that, in order to set aside a sale, "compelling equities must outweigh the interest in finality." *Id.* (citing *In re Transcontinental Energy*, 683 F.2d 326 (9th Cir.1982); *Matter of Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985)). The bankruptcy court then concluded: "[i]n this Circuit, though inadequacy of price alone is insufficient to set aside a sale, inadequacy of price coupled with lack of notice or other unfairness or impropriety may cumulatively be sufficient to set aside a sale." *Id.* (citing *Mason*).

The bankruptcy court then stated its reasoning as follows:

In this case, the creditors, Roadrunner and the court received a notice of proposed sale which recited that the proper-ty was being sold for 70% of appraised value of $1,330,000.00. A correct summary of the appraisal was included with the notice and valued the terminal portion of the property at $1,330,000.00, leading the court and creditors to believe that only the terminal portion of the property owned by the debtor in Milwaukee was being sold to Roadrunner. Roadrunner was not deceived by the notice since it was aware of the exact terms of its bid and the conversation and other correspondence it had with the debtor. Unfortunately, neither the creditors nor the Court were aware of this oral and written correspondence between Roadrunner and the debtor and neither the debtor nor Roadrunner called these significant errors to their attention. The property covered by the order of sale allowed, unbeknownst to the Court or the creditors, a sale of 24 acres of property with an appraised value of $1,675,000.00 to be sold at 55% of value rather than 11 acres of property with an appraised value of $1,330,000.00 to be sold at 70% of value. The Court concludes that the inadequacy of price may be sufficient in this case to require setting aside of the sale, and that the inadequacy coupled with the misleading if not erroneous notice sent to creditors and Roadrunner is sufficient under the law of this circuit to cause the sale to be set aside. The Court is convinced after reviewing the facts of this case that it would not have allowed this sale to occur had the true facts been made known and that the debtor would have been required to renotice the proposal giving interested parties an opportunity to consider the true facts prior to being required to plead thereto. Neither the creditors nor the Court should be required to read the notice and the enclosures, seek the back up documents, read the legal description, and then extrapolate from it that the description in the bid may contain more acres than that recited in the appraisal summary. This the Court finds to be an unreasonable amount of sleuthing, particularly given the language of the notice and the actual

knowledge possessed by both the debtor and the prospective purchaser.

*Id.* at 6–7.

Appellant contends that the bankruptcy court's decision setting aside the sale order was in error for several reasons. First, appellant contends that the bankruptcy court applied an improper test in determining whether Rule 60(b) requirements were met. Appellant contends that debtor's burden in connection with its motion to set aside the sale order should have been that of demonstrating "extraordinary circumstances," rather than "compelling equities." Appellant argues that the debtor did not fulfill its burden in showing that the sale order should be set aside. Second, appellant contends that the debtor knew or should have known that appellant was bidding on the entire parcel and that the consequences of debtor's "utter lack of diligence" should not be visited upon appellant; appellant states that it changed its position in reliance upon the sale order. Third, appellant contends that the notice received by the creditors was adequate. Appellant argues that the cases cited by appellee and the bankruptcy court allow the sale order to be set aside only when no notice or no timely notice was given to creditors. Fourth, appellant contends that the bankruptcy court's decision is flawed from a public policy standpoint because it encourages careless administration by debtors and encourages creditors to abandon their oversight functions while discouraging potential buyers from making legitimate offers to bankruptcy estates. Finally, appellant contends that the bankruptcy court should have held a hearing to determine whether any abatement in the purchase price paid by appellant should be required under the applicable law.

▮ In examining the record in this case, the parties' arguments, and the relevant law, the court does not find that the bankruptcy court abused its discretion in setting aside the March 10, 1989 sale order. First, this court does not conclude that the bankruptcy court applied an incorrect legal standard in ruling upon the debtor's motion to set aside the sale order. The bankruptcy court correctly cited Rule 60(b) of the Federal Rules of Civil Procedure as the governing standard; this court further does not find that the bankruptcy court's interpretation of this standard as being one of "compelling equities" was in error. *See In re Chung King, Inc.,* 753 F.2d 547, 550–54 (7th Cir.1985), and *In re Transcontinental Energy Corp.,* 683 F.2d 326, 328 (9th Cir.1982) (reciting and applying the "compelling equities" standard). In *Mason v. Ashback,* 383 F.2d 779 (10th Cir.1967), the Tenth Circuit Court of Appeals stated:

> [a] court of equity may set aside an order of sale either before or after confirmation when it appears that the same was entered through mistake, inadvertence, or improvidence.
>
> While a judicial sale will not be set aside on the ground of inadequacy of price alone, unless the inadequacy is so great as to shock the conscience of the chancellor, inadequacy of price, accompanied with other circumstances having a tendency to cause such inadequacy, or indicating any apparent unfairness or impropriety, will justify setting aside the sale. Such additional circumstances may be slight and insufficient in themselves to justify vacating the sale.

*Id.* at 780 (quoting *Webster v. Barnes Banking Co.,* 113 F.2d 1003, 1005 (10th Cir.1940)). *See also In re F.A. Potts & Co., Inc.,* 93 B.R. 62, 65 (E.D.Pa.1988), *aff'd,* 891 F.2d 280 (3d Cir.1989) (stating that although inadequacy of price and minor errors are usually insufficient to set aside a sale, "fundamental flaws ... which would have prevented the bankruptcy court from approving the sale in the first instance are sufficient"). Further, the court cannot conclude that the bankruptcy court's focus on creditor protection, rather than focusing exclusively on the rights of the appellant *vis-a-vis* the debtor, was in error. *See Procter & Gamble Mfg. Co. v. Metcalf,* 173 F.2d 207, 209 (9th Cir.1949) (stating that it is of "overwhelming importance that the rights of creditors in a concern in bankruptcy should be protected and that a disposal of property on terms which

violate the rule should not be permitted to stand").[2]

Second, the court does not find that the bankruptcy court erred in its legal conclusion that material defects in notice, rather than simply a late or total lack of notice, can be used to justify setting aside a sale order where the notice procedure results in the sale of property for an inadequate price. *Mason*, 383 F.2d at 780. Thus, although as the bankruptcy court recognized, inadequate price is itself generally insufficient to justify setting a sale aside and undercutting the buyer's interest in finality, inadequate price and defective notice can combine to create justification for setting aside a sale order. *Id.* Further, on this record, the court cannot conclude that the bankruptcy court's factual determination that the notice in question was misleading was clearly erroneous, because the bankruptcy court (R. Doc. 12, at 6–7), and the creditors' committee (R. Doc. 17, at 43–45), were misled into believing that the proposed sale of the Milwaukee property was for 70% of appraised value, rather than for 55% of appraised value, which was in fact the case when the entire parcel of real property was considered. In sum, because this court concludes that the bankruptcy court applied the correct legal standard and because its factual findings are not clearly erroneous, this court cannot find that the bankruptcy court abused its discretion in ordering the sale order set aside. Thus, the court finds appellant's contentions of error are without merit, and that the bankruptcy court's January 17, 1990, decision to set aside the sale order should be affirmed.

With regard to the issue of whether an abatement of the purchase price was required, appellant states that it raised this issue before the bankruptcy court in its response to the debtor's motion to vacate the sale but that the bankruptcy court failed to address the appropriateness of an abatement in its decision. The record reflects that the abatement issue was indeed raised in the bankruptcy court, but not apparently ruled upon by the court. (R. Doc. 10, at 27–30; R. Doc. 17, at 56). In response, the debtor/appellee contends that appellant must pursue its abatement remedy by commencing an adversary proceeding in bankruptcy court under Rule 7001(7) of the Bankruptcy Rules. Upon consideration of the parties' arguments and the record in this case, this court concludes that it should remand to the bankruptcy court to either state its findings with regard to the abatement issue or, if the issue of appellant's entitlement to an abatement of the purchase price is not properly before the bankruptcy court as a procedural matter, to so state.

IT IS BY THE COURT THEREFORE ORDERED that this proceeding is remanded to the bankruptcy court to consider whether the issue of appellant Roadrunner Freight Systems, Inc.'s entitlement to an abatement of the purchase price is properly before it as a matter of procedure and, if so, for the bankruptcy court to state its findings on this issue. In all other respects, however, the January 17, 1990, decision of the bankruptcy court setting aside the order of sale is affirmed.

---

2. The court is similarly unpersuaded by appellant's argument that the bankruptcy court's decision to set aside the sale order undermines public policy interests. As the debtor/appellee points out, the purpose of the finality rule is to obtain the highest price for the debtor's assets, for the benefit of the debtor's estate and ultimately, the creditors. If defects in notice result in debtor's assets being sold for an inadequate price, strict adherence to the finality rule would require a result contrary to the rule's underlying purpose of achieving the highest possible price. Thus, the court rejects this argument on appeal.